# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| Erick Coleman, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | Case No. 17 C 2460 |
| v. | ) |  |
|  | ) | Judge Elaine E. Bucklo |
| Sheriff Tom Dart,[1] | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

Plaintiff Erick Coleman, formerly a pretrial detainee at the Cook County Jail, brought this 42 U.S.C. § 1983 action against Cook County Sheriff Tom Dart (Defendant) about adverse living conditions Plaintiff experienced at the jail between January and May of 2017.[2] Currently before the Court are Defendant's motion for summary judgment and Plaintiff's response. For the reasons stated herein, Defendant's motion for summary judgment is granted in part and denied in part. Plaintiff may proceed with his claim that he endured unconstitutional living conditions in Division 2, Tier D4 from January 7 to 24, 2017. His other claims are dismissed.

## BACKGROUND

In accordance with the Court's rules, Defendants filed with their summary judgment motion a N.D. Ill. Local Rule 56.1(a)(3) Statement of Material Facts. (Dkt. 64.) A Rule 56.1 Statement

---

[1] The cover page of Plaintiff's amended complaint lists Sheriff Dart and the Cook County Sheriff's Office as Defendants, but the Sheriff's Office is mentioned nowhere else in the complaint. (Dkt. 15.) Whether Plaintiff intended to name the Sheriff's Office as a separate Defendant or was simply referring to Tom Dart's office is unclear. Plaintiff's claim against Dart in his official capacity is the same as a claim against the Sheriff's Office. *Johnson v. Cook Cty. Sheriff's Office*, No. 16 C 07523, 2018 WL 2193235, at *2 (N.D. Ill. May 14, 2018) (official capacity claims are simply "another way of pleading an action against an entity of which an officer is an agent") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Though summons never issued for the Sheriff's Office, attorneys entered appearances for it (yet they never included it in any of their pleadings). The Court's 6/21/17 order should have clarified that the Sheriff's Office is not a party. The Court will direct the Clerk to correct the docket.

[2] Plaintiff's other claims in his amended complaint were dismissed and the Court refused his request to file a second amended complaint seeking to add defendants and claims to this suit. (Dkts. 16, 56.)

and responses to it assist the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Also consistent with the Court's rules, Defendants provided Plaintiff with a Local Rule 56.2 Notice, explaining what Local Rule 56.1 requires of a pro se litigant opposing summary judgment. (Dkt. 64-1.)

In response to Defendants' summary judgment motion and Rule 56.1 Statement, Plaintiff filed: (1) a memorandum opposing Defendants' motion, (2) his own motion for summary judgment, (3) his own Rule 56.1 Statement, and (4) declarations from himself and witnesses. (Dkts. 67-73.) These pleadings appeared to be Plaintiff's response to Defendants' summary judgment motion. Plaintiff's Rule 56.1 Statement, however, did not properly address the facts asserted in Defendants' Rule 56.1 Statement. The Court thus granted Defendants' motion to strike Plaintiff's Rule 56.1 Statement and instructed him how to properly respond. (Dkt. 82.) Plaintiff, who was no longer incarcerated, filed no additional response to Defendants' Rule 56.1 Statement. He did, however, request more time, stating that he was unfamiliar with Court procedures and was meeting with its Pro Se Help Desk for assistance. (Dkt. 88.) He further stated that Defendants failed to provide him with his medical records, which he contended were "important [to] … responding to Defendant's motion for summary judgment." (*Id.*)

The Court denied Plaintiff's requests for additional time and to reopen discovery. (Dkt. 90.) The Court stated, however, that it would take into consideration Plaintiff's lack of medical records when addressing the motion for summary judgment. (*Id.*)

Plaintiff's failure to file a proper response to Defendants' Rule 56.1 Statement allows the Court to consider Defendants' Rule 56.1 factual statements admitted, so long as they are supported by the record. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *see also Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 Fed. Appx. 642, 643 (7th Cir. 2011) (a plaintiff's pro se status does not excuse him from following local rules). Nevertheless, Plaintiff has presented many exhibits and his Memorandum Opposing Summary Judgment cites them in a way that the Court does not have to scour the record for evidence supporting his arguments. (Dkt. 67); *see also Casna v. City of Loves Park*, 574 F.3d 420, 424 (7th Cir. 2009) (the purpose of Rule 56.1 is to organize the evidence to save a court from having to "root through the hundreds of documents") (citation omitted). The Court thus considers Plaintiff's Memorandum Opposing Summary Judgment and the exhibits it cites when addressing Defendants' motion. With these standards in mind, the Court turns to the facts of this case.

Plaintiff entered the Cook County Jail on January 7, 2017. (Dkt. 64 ¶ 1.) From January 7 to January 24, 2017, he was housed in Division 2, Tier D4. (*Id.* at ¶ 2.) From January 24 to February 27, 2017, he was housed in Division 2, Tier D1. From February 27 to March 14, 2017 (except for two days), he was housed in Division 6, Tier 2D. He was then moved to Division 10 for two weeks until March 28, 2017. From March 28 to May 17, 2017, he was housed in Division 6, Tier 1L. (*Id.*, citing Dkt. 64-3, Cook County Jail Bed Assignment Record for Plaintiff).

A grievance system existed at the jail during Plaintiff's incarceration, and inmates could grieve issues related to the conditions of his confinement. (Dkt. 64 ¶¶ 3-4.) The grievance process

begins with an inmate filling out an Inmate Grievance Form within fifteen days of the incident or condition being grieved. (*Id.* at ¶ 5, citing Dkt. 64-5, Deputy Director of Inmate Services John Mueller Declaration.) A written response is prepared and returned to the inmate, who must sign his receipt of it. (*Id.* at ¶ 6.) Only one issue may be grieved per form. (*Id.* at ¶ 7.) If the inmate is dissatisfied with the response, he must appeal within fourteen days. (*Id.* at ¶ 8) (though not addressed by Defendant, the record contains two different grievance forms: the 2014 form states inmates have 14 days to appeal, while the 2016 form states 15 days for appeals, *compare* Dkt. 64-6, pg. 2 and 20, bottom left corner.) To exhaust administrative remedies, the inmate must appeal. (*Id.*) The above described procedures are stated on grievance forms. (*Id.*; *see also* Dkt. 64-6, pg. 1-2, 19-20.)

Plaintiff's grievances and non-grievances (explained later) are included in the record. (Dkt. 64 ¶ 9, citing Dkt. 64-4, Mueller Decl. ¶ 9).[3] The Court counts over 50 grievances filed by Plaintiff during the relevant time period for this case. (Dkt. 64-6 to 64-10.) Only a handful of these grievances, however, relate to adverse living conditions:

- On 1/19/17, while in Division 2, Dorm 4, Plaintiff filed a grievance, stating: "the vents in the ceiling are blowing deadly dust to the point I can't breath[e] and my lungs are clogging up from the deadly dust mites. … There is mild[ew] all over this building and rust in the shower. Mild[ew] and mold. … I have a right to clean and sanitary living." (Dkt. 64-9, pg. 8.) Plaintiff's filing, though on a grievance form, was considered a "Non-grievance (Request)." (*Id.*) On 1/23/17, he received a response saying that a "work order has been submitted," shower areas "have been power washed," and "detainee will be moved from Dorm 4 to Dorm 1." (*Id.* at pg. 9.) No control number was assigned to the grievance and the section for an appeal is marked through with Xs. (*Id.* at 8-9.)

---

[3] Both Plaintiff and Defendant submitted copies of Plaintiff's grievances. (Dkt. 64-6 to 64-10; Dkt. 69.) Although Plaintiff objects to Defendant's characterization of some of his grievances as non-grievances, (dkt. 69 ¶ 11), he neither contends that grievances are missing from Defendant's exhibits, nor does he submit grievances not part of Defendant's exhibits. (Compare Dkt. 64-6 to 64-10 and Dkt. 69 exhibits). The Court thus considers the grievances submitted by Defendant, which Inmate Services Director Mueller certifies are complete, to be true and accurate copies of all of Plaintiff's grievances between January 7 and May 17, 2017.

- On 1/21/17, Plaintiff filed another grievance about conditions in Division 2, Dorm 4. He complained: "My living area is unsafe and unclean. I have to drink water out of a nasty an[d] rust, mil[]dew infected sink. I have to drink water out of the same sinks inmates wash their socks and underw[e]ar." (Dkt. 64-9, pg. 20.) Plaintiff requested "that I or Division 2 Dorm 4 have healthy drinking water imported in or a personal drinking fountain. Different from where the rust and mi[]dew is." (*Id.*) This grievance was designated as a non-grievance request. (*Id.*) On 2/8/17, Plaintiff received a response: "Inmate has submitted this issue on 1/20/17 and has been informed he must await a response." (*Id.* at 22.) Again, the appeal section was crossed out with Xs. (*Id.*)

- On 2/11/17, Plaintiff filed Grievance #2017-02270, complaining that water from the shower in Division 2, Dorm 1 "came on … extremely hot[] and … burned my … private area." (Dkt. 64-6, pg. 19). A response was issued on 2/23/17, stating: "Inmate is advised to seek medical attention if injured. Cook County Dept. of Facilities Mgmt. was informed/apprised of your concern." (Dkt. 64-6, pg. 20.) Plaintiff signed his receipt of the grievance response on 2/28/17. The space for an appeal is blank—it was neither crossed out by jail officials nor filled in by Plaintiff. (*Id.*)

- On 2/28/17, Plaintiff filed a grievance stating: "I have bugs all on my clothes and my body, nose, and in my ears." (Dkt. 64-6, pg. 21) (Grievance #2017-02949). On 3/2/17, a response was issued directing Plaintiff to submit a medical request form before submitting a grievance in order to expedite the treatment of bugs. (*Id.* at pg. 24.) On 3/9/17, Support Services Staff reported that Plaintiff's claim was misclassified as a grievance and sent to a case worker, when it should have been forwarded to Cermak as a health issue. (*Id.* at pg. 22-23.) The appeal section of the grievance is blank. (*Id.* at 24.)

- On 3/29/17, Plaintiff filed a grievance in two parts. The first part complained that the only drinkable water source in Division 6, Tier 2D, Cell 1 was from "rust infected ... mil[l]dew sink." (Dkt. 64-10, pg. 11.) The second part explained that Plaintiff had been moved from cell #14 to cell #1 in Division 6, but his new cell "was very very nasty and the water sink … has very very high[] amount of rust and mil[]dew. … This water makes me very sick." (Dkt. 64-10, pg. 10.) The grievance covered the period from 2-27-2017 to 3/13/17. (*Id.*) The grievance was designated as "non-complaint," received no control number, and was denied because "[t]he grieved issue did not occur within the last 15 calendar days." (*Id.* at 12.) The grievance was marked as not appealable and no space for an appeal was provided.

- On 3/31/17, Plaintiff filed Grievance #2017-04982, which was also in two parts. The first page is dated 3/30/17 and states: "when I was taking a shower, I notice that the bathroom is very nasty, dirty, and unclean. … This shower has not been

5

power washed at all. … mold and mil[]dew everywhere." (Dkt. 64-8, pg. 7.) Page two is dated 3/31/17 and states: "The shower was nast[ier] than the day before. There is large amounts of dirt[] that come off of inmates bod[ie]s that is everywhere. … There are many, many [g]erms in this shower. The CCDOC is a trillion dollar company and in no[] way is this healthy." (*Id.* at 8.)

On 4/12/17, a response was written, stating: "An unannounced inspection was conducted regarding this issue and no mold was observed." (Dkt. 64-8, pg. 9.) The response further stated that mold is essentially unavoidable in places where moisture and low air flow exist; it is easily removed with cleaning agents and cloths; the showers are power washed once a month; and mold, by itself, rarely causes illnesses. (*Id.*) Plaintiff received the response on 4/16/17, but filed no appeal. (*Id.*)

- On 4/2/17, Plaintiff filed Grievance #2017-04985, stating that the vents in his Division 6, Dorm 1L cell have "rust … and when the air blows, it [is] blowing dust mites, deadly mildew, and dangerous dust." (Dkt. 64-8, pg. 11.) On 4/28/17, Plaintiff received a response that a work order had issued "to clean & paint vent covers." (*Id.* at pg. 12.) The grievance's appeal section is blank. (*Id.*)

- On 4/15/17, Plaintiff filed Grievance #2017-05904, complaining that "the bathroom in Division 6-1L has a very bad sewage smell that makes me sick and I have been having shortness of breath." (Dkt. 64-8, pg. 35.) A counselor responded that a work order had been issued to a plumber. (*Id.* at 38.) On 5/11/17, Plaintiff received the grievance response. No appeal was taken. (*Id.*)

- On 4/20/17, Plaintiff filed Grievance #2017-06056, stating that two union workers made Plaintiff clean showers against his will "because of my grievances about … dirty showers, mold, mil[]dew, and unsanitary showers." (Dkt. 64-8, pg. 42.) On 5/5/17, Plaintiff received a response, which he signed "under protest." The response explainied that: "Inmates have a responsibility to clean up after themselves … [and] to clean common areas of Living Units, which includes the Shower Areas." (*Id.* at 43-44.) No appeal was taken. (*Id.* at 43.)

- On 4/26/17, Plaintiff filed Grievance #2017-06269, stating "while taking a shower, my chest started to cramp after I inhaled, very sev[]er[e] pain. I almost passed out from the smell of mold and mil[]dew and sewage." (Dkt. 64-8, pg. 54.) The grievance was referred to health care providers, who prescribed Loratadine (an antihistamine) on 4/26/17. (*Id.* at 55.) Plaintiff signed his receipt of the grievance response "under protest." (*Id.*) No appeal was taken. (*Id.*)

The parties' exhibits contain many more grievances, but they concern Plaintiff's inability to use the jail's library, his inability to obtain a cane, and allegations of officer misconduct. Of the more than fifty grievances included with the parties' exhibits, Plaintiff appealed only two.

- On 1/21/17, Plaintiff filed Grievance #2017-01267 stating that the Inmate Handbook stated that inmates would be treated "fairly and with respect." (Dkt. 64-6, pg. 5.) Plaintiff alleged that, when he asked Officer Dixon why Plaintiff could not speak to a "white shirt" (a sergeant), Dixon threatened to beat Plaintiff for asking. (*Id.*) On 2/2/17, Plaintiff received a response: "Sir, there is insufficient evidence to prove or disprove the incident. … Staff will be reminded to remain professional at all time." (*Id.* at 6.) Plaintiff filled in the appeal section of the grievance, stating: "This is corruption and a cover up by Cook County's Office. … I gave you all the time and date. … It's on camera." (*Id.*) On 2/7/17, Plaintiff received a response to his appeal: "There is insufficient evidence to prove or disprove your hearsay allegations." (*Id.*)

- On 1/24/17, Plaintiff filed Grievance #2017-01269, which similarly alleged that the Inmate Handbook stated inmates would "be treated fairly and with respect," but when he asked about his rights upon being removed from Dorm 4QL6, "Sheriff Dixon and white shirt (Wolf). … said he'll beat the shit out of me." (Dkt. 64-6, pg. 15.) On 2/2/17, Plaintiff received a response: "there is insufficient evidence to prove or disprove the incident occurred." (*Id.* at 16.) That same day, Plaintiff wrote in the appeal section of his grievance, "This is corruption and a cover up. … Now this is a conspiracy. … I will put Tom Dart in my lawsuit." (*Id.*) The response to his appeal stated: "Inmate is advised to seek legal assistance for any of his legal concerns." (*Id.*)

Plaintiff states in his declaration that he "appeal[ed] each and every" grievance, but he acknowledges that he did so "by sending them to the Illinois Department of Corrections, Jail and Detention Standards Unit, 1301 Concordia Court, P.O. Box 19277, Springfield, Illinois 62794." (Dkt. 73, Pl. Decl. pg. 2-3.) The 2016 grievance form includes language stating that, "after receiving an appeal decision, if [the inmate is] dissatisfied with the outcome, he must submit the appeal grievance to" the office in Springfield. (Dkt. 64-6, pg. 20.) Plaintiff explained in his deposition that he thought sending appeals to Springfield was the proper way to appeal and that he

did not realize until sometime in August of 2017 that he was supposed to submit his appeal to Cook County Jail personnel. (Dkt. 64-4, Pl. Dep. pg. 119-25.)

Plaintiff saw showers being power-washed, but according to Plaintiff, crews power washed without applying sanitary solution and "use[d] dirty brushes … basically … spreading more germs." (Dkt. 64 ¶ 31, citing Dkt. 64-4, Pl. Dep. pg. 43.) Defendants submitted sanitation records for Division 6, but not for Division 2. (Dkt. 64-7.)

Plaintiff visited an ear, nose, and throat doctor at Stroger Hospital about nasal congestion, which began when entered the jail. (Dkt. 73, pg. 3-4.) According to Plaintiff, that doctor told him that mold and other jail conditions were the cause of the congestion. (*Id.*) Plaintiff states that a CT scan was ordered and surgery was recommended. (*Id.*) As previously noted, Plaintiff received no medical records during discovery, and there are no medical records to corroborate or disprove Plaintiff's declaration statements.

## **DISCUSSION**

Defendants seek summary judgment based on four arguments: (1) Plaintiff failed to exhaust administrative remedies; (2) he cannot establish a constitutional violation because the conditions about which he complains (mold, mildew, rust, dust, and water-quality) were not sufficiently serious; (3) Defendants did not act with deliberate indifference since they responded appropriately to Plaintiff's complaints; and (4) there is no evidence Plaintiff suffered physical injuries from the adverse living conditions.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). The Court's role is "to determine

whether there is a genuine issue for trial," *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), not to "weigh conflicting evidence ... or make credibility determinations," *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). If the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, the burden shifts to the non-movant who must show more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* (citation omitted).

### 1) Whether Plaintiff Exhausted Available Administrative Remedies

The Prison Litigation Reform Act states: "No action shall be brought with respect to prison conditions under section 1983 of this title … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement applies to both prisoners and pretrial detainees, *see* § 1997e(h), and "is 'mandatory.'" *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) ("a court may not excuse a failure to exhaust" a jail's available administrative remedies, even when the inmate's claim was investigated through a different procedure). Failure to exhaust is an affirmative defense that defendants bear the burden of proving. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Also, exhaustion is an issue that must be determined by a judge, as opposed to a jury, and where there are material factual disputes about exhaustion, a court should conduct an evidentiary hearing to resolve them. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)).

The summary judgment record in this case demonstrates that Plaintiff failed to exhaust available administrative remedies for all but two of his grievances about adverse living conditions. To exhaust administrative remedies, an inmate must use "'all steps that the agency holds out,' and he must 'do[ ] so properly (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006)). An inmate must use "the specific procedures and deadlines established by the prison's policy," and a Cook County Jail inmate "must comply with the CCDOC grievance process." *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016).

The jail's grievance process requires inmates to appeal responses, and the jail's grievance form not only instructs inmates that they must appeal to exhaust administrative remedies but also provides a space for inmates to write their appeals. *See* Dkt. 64-6; *Hernandez*, 814 F.3d at 842; *Rodriguez v. Dart*, No. 17 C 39, 2018 WL 3438943, at *2 (N.D. Ill. July 17, 2018); *Bryant v. Sczerua*, No. 16 CV 2180, 2017 WL 1049845, at *2 (N.D. Ill. Mar. 20, 2017) (all three cases address Cook County Jail's grievance process).

The record in this case shows that Plaintiff filed numerous grievances at the Cook County Jail, more than 50 in the four-month period relevant to this case (January 19 to May 17, 2017). But he properly appealed only two, both of which concerned jail officers' conduct, not adverse living conditions. (Dkt. 64-6, pg. 5-6; Dkt. 64-6, pg. 15-16.) Plaintiff did not fill in the grievance appeal section for any of his other grievances.

Plaintiff declares he "appeal[ed] each and every" grievance, but acknowledges that he did so "by sending them to the Illinois Department of Corrections, Jail and Detention Standards Unit [in] Springfield, Illinois 62794." (Dkt. 73, Pl. Decl. pg. 2-3.) He explained in his deposition that he thought sending his appeals to Springfield was the proper way to appeal and that he did not realize until sometime in August of 2017 that he was supposed to submit appeals to Cook County Jail personnel. (Dkt. 64-4, Pl. Dep. pg. 119-25.) The August 2016 grievance form includes language that inmates may seek further review from the Springfield office, but clearly states that such review is available after receiving a response: "after receiving an appeal decision, if you are dissatisfied with the outcome, you must submit the appeal grievance to the Illinois Department of Corrections, Jail and Detention Standards Unit . . . [in] Springfield." (Dkt. 64-6, pg. 20.)

Plaintiff may have intended to appeal his grievances, but he skipped the step of first seeking appellate review within the jail before sending for additional review in Springfield. As noted above, an inmate exhausts administrative remedies "by adhering to 'the specific procedures and deadlines established by the prison's policy.'" *Hernandez*, 814 F.3d at 842 (quoting *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015)). The availability of administrative remedies "is not a subjective inquiry dependent on the knowledge of the inmate in question." *Camacho v. Dart*, No. 15 C 3396, 2017 WL 680329, at *6 (N.D. Ill. Feb. 21, 2017). "'A prisoner's lack of awareness of a grievance procedure ... does not excuse compliance.' ... The PLRA 'says nothing about a prisoner's subjective beliefs, logical or otherwise, about administrative remedies that might be available to him.'" *Harper v. Dart*, No. 14 C 01237, 2015 WL 3918944, at *3 n.4 (N.D. Ill. June 24, 2015) (quoting *Twitty v. McCoskey*, 226 F. App'x 594, 596 (7th Cir. 2007) (citing *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000)).

11

Plaintiff's failure to properly appeal grievance responses means he did not exhaust administrative remedies. This failure to exhaust applies to almost all—but not all—of Plaintiff's grievances about the adverse conditions of his confinement.

Plaintiff's initial two grievances about adverse living conditions were processed in a way that arguably made the grievance process unavailable to him. Inmates are required to exhaust only administrative remedies that are "available." § 1997e(a). On January 19, 2017, Plaintiff filed a grievance stating that he had "a right to clean and sanitary living. The vents on the ceiling are blowing deadly dust, to the point I can't breath[e], and my lungs are clogging up ... There is mil[]d[ew] all over this building and rust in the shower. Mil[dew] and mold." (Dkt. 64-9, pg. 8.) This grievance was designated as a "Non-Grievance Request," was not assigned a control number, and the appellate section of the form was crossed out. (*Id.* at pg. 8-9.) Plaintiff's January 21, 2017, grievance was similarly processed. In that grievance, Plaintiff complained that Division 2 Dorm 4 was "unsafe and unclean" and the only drinking water was from "nasty[, ] rust, mil[]dew infected sink[s], ... where inmates wash their socks and underw[ear]." (Dkt. 64-9, pg. 23.) This grievance was designated as a non-grievance, denied as repetitive of the January 19th grievance, and the appellate section was crossed out. (*Id.* at pg. 23-24.) The form for these two grievances includes language explaining that:

> when a grievance issue is processed as a non-grievance request, it will not be assigned a control #, nor can it be appealed or remedies exhausted; however, an inmate may re-submit the grievance issue after 15 days to obtain a 'Control Number' if there has been no response to the request, or the response is deemed unsatisfactory.

(Dkt. 64-9, pg. 23.)

This Court has addressed the Cook County Jail's processing of grievances as non-grievance requests in several cases. In 2015, another member of this Court held an evidentiary hearing with

12

Deputy Director of Inmate Services John Mueller testifying about the process. *Shelby v. Dart*, No. 14 C 2419, 2015 WL 8329971 (N.D. Ill. Dec. 9, 2015) (Kendall, J.). Addressing the language quoted above, the Court stated that "the grievance form does not inform ... that an inmate must refile a form originally processed as a non-grievance request in order to exhaust his or her administrative remedies with respect to that issue. Instead, the grievance form states that an inmate *may* refile a grievance form in order to obtain a control number." *Id.* at *2 (emphasis in original). Observing that the Inmate Handbook was silent about the procedures for non-grievances, that the language on the grievance form was less than clear, and that re-filing a grievance after it had been designated as a non-grievance ran the risk of it being untimely, the Court concluded that an inmate could not be expected to follow procedures that were vague and not clearly made known to him. *Id.* at *5-6.[4]

Other members of this Court have followed the same reasoning and held that the conversion of a Cook County Jail grievance into a non-grievance request and the crossing out of the grievance form's appellate section thwarted the grievance process, thus rendering the remainder of the grievance process unavailable. *See Munoz v. Dawalibi*, No. 14 C 601, 2015 WL 719373, at *6 (N.D. Ill. Feb. 18, 2015) (Blakey, J.); *Harper v. Dart*, No. 14 C 01237, 2015 WL 3918944 at **4-5 (N.D. Ill. June 24, 2015) (Chang, J.)); *Camacho v. Dart*, No. 15 C 3396, 2017 WL 680329, at *5 (N.D. Ill. Feb. 21, 2017) (Rowland, M.J.); *Evans v. Bilal*, No. 15 C 2473, 2017 WL 3278824, at *5 (N.D. Ill. Aug. 2, 2017) (Pallmeyer, J.). This Court agrees that the jail's handling of Plaintiff's January 19 and 21, 2017 grievances rendered the appellate process unavailable.

---

[4] Whether Cook County Jail subsequently included language in the Inmate Handbook about how to exhaust administrative remedies for a grievance initially processed as a non-grievance request or simply abandoned the process is unclear. Defendant neither addresses the process, nor includes a copy of the handbook.

Defendant does not address how Plaintiff was supposed to exhaust administrative remedies for the January 19 and 21, 2017 grievances. Rather, he argues that the grievances were improper because only one issue can be grieved per form and the grievances concerned adverse living conditions lasting at least eleven days. According to Defendant, each day Plaintiff endured the adverse conditions counted as one issue, such that he should have filed eleven grievances, one for each day. This argument is not only illogical, but also not supported by the record. Plaintiff's January 19, 2017 grievance was not denied because it failed to comply with procedural rules. Rather, it was converted to a non-grievance and the response indicated that relief (power washing and a transfer to another tier) was on the way. (Dkt. 64-9, pg. 8-9.) Nothing in the record indicates the jail follows a one-day-one-issue approach for grievances about confinement conditions. Although the January 21, 2017 grievance was denied on a procedural ground—that it repeated issues in the January 19th grievance (it doesn't), Defendant does not argue that that the grievance should not count towards exhaustion because of the procedural reason stated in the response.

Accordingly, the Court cannot find that administrative remedies beyond filing a grievance and receiving a response were available to Plaintiff with regard to his grievances filed on January 19 and 21, 2017. Plaintiff may proceed with the issues in these grievances—that vents in Division 2, Dorm 4 were dirty and dusty; that showers were covered with rust, mold and mildew; and that the only drinking water was from "nasty" sinks covered with rust and mildew and in which other inmates washed their socks and underwear. All other claims regarding Plaintiff's living conditions in the Cook County Jail are dismissed for failure to exhaust his administrative remedies.

### 2) Whether Plaintiff's Division 2 Conditions, Defendants' Response to Them, and Plaintiff's Injuries Can Establish a Constitutional Violation

The remainder of Defendants arguments—that the conditions Plaintiff complained about were not sufficiently serious, that Cook County Jail officials' response to those conditions was reasonable, and that Plaintiff suffered no physical injuries—are not supported by the record.

Pretrial detainees' constitutional rights derive from the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment, which applies to convicted prisoners. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). "In the context of a conditions of confinement claim, a pretrial detainee is entitled to be free from conditions that amount to 'punishment,' while a convicted prisoner is entitled to be free from conditions that constitute 'cruel and unusual punishment.'" *Id.* To establish a constitutional violation, Plaintiff must be able to prove both (1) that his living conditions were sufficiently serious and (2) that the defendants' response was unreasonable and with a sufficiently culpable state of mind. *Id.*; *Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015).

Conditions are "sufficiently serious," when they "deprive[] the prisoner of a 'minimal civilized measure of life's necessities.'" *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). When addressing the severity of conditions, courts must consider their cumulative effect. *Id.*; *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Viewing the record in a light most favorable to Plaintiff, he may be able to establish that Division 2 Dorm 4's conditions included: extremely dirty, dusty vents; excessive mold and mildew in showers and other areas; and rusty, mildew covered sinks. Such conditions could be considered sufficiently serious. *See Gray*, 826 F.3d at 1005 (finding that plaintiff avoided summary judgment on his claim "that the myriad infestations and his lack of access to adequate cleaning supplies, taken together, deprived him of the basic human need

of rudimentary sanitation in violation of the Eight Amendment"); *Budd*, 711 F.3d at 843 ("unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies" could establish a constitutional violation); *Williams v. Williams*, No. 1:16-CV-209, 2019 WL 265095, at *5 (N.D. Ill. Jan. 18, 2019) ("cockroaches and other pests, broken windows in a filthy shower area, regurgitating sewers, and inadequate cleaning supplies" were considered sufficiently serious to deny summary judgment); *Lyons v. Vergara*, No. 14 CV 9564, 2016 WL 4493455, at *4–7 (N.D. Ill. Aug. 26, 2016) (the combined effect dirty sheets, no bath towel, a filthy and pest-infested cell, and yellow water that tasted strange were sufficiently serious to survive summary judgment). Defendants have not demonstrated that there is no triable issue of fact about the seriousness of Plaintiff's living conditions in Division 2, Dorm 4.

Nor have Defendants established that Plaintiff would be unable to prove the second element of his claim. Though not specifically addressed by the Court in its order allowing Plaintiff's amended complaint to proceed, Plaintiff's allegations stated both individual and official capacity claims against Sheriff Dart. To establish liability against Dart in his individual capacity, Plaintiff must prove that Dart "possessed a purposeful, a knowing, or possibly a reckless state of mind." *Smith*, 803 F.3d at 309 n.2; *see also Miranda v. County of Lake*, 900 F.3d 335, 353-54 (7th Cir. 2018) ("a detainee must 'prove more than negligence but less than subjective intent—something akin to reckless disregard'") (citation omitted) (pretrial detainee's medical claim); *Steele v. Prisoner Transp. Sys.*, No. 3:18-CV-549-JD-MGG, 2019 WL 330945, at *2 (N.D. Ind. Jan. 24, 2019) (conditions of confinement claim). To establish liability against Dart in his official capacity, Plaintiff must be able to prove that his unconstitutional confinement conditions were caused by "(1)

16

an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)).

Plaintiff could testify at trial, and his many grievances indicate, that there was a significant problem with mold, mildew, and dust at the jail and that the jail's remedy of power washing once a month with no cleaning solutions was a clearly insufficient remedy. Such proof could establish a Fourteenth Amendment violation.

Lastly, Defendants contend that Plaintiff cannot recover damages because he cannot show he suffered significant physical injuries or that his physical injuries were caused by the adverse living conditions. Section 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury." Although this statute makes physical injury a prerequisite for compensatory damages for mental and emotional harm, it bars neither the bringing of suit nor seeking nominal and punitive damages. *See Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) ("the statute is inapplicable to awards of nominal or punitive damages"). Furthermore, Plaintiff testified that a physician at Stroger Hospital informed him that his "nose was damage[d] and infected due to mold and conditions at the jail." (Dkt. 73, Pl. Decl., pg. 4.) As explained at the beginning of this opinion, Plaintiff has not received his medical records and the record is thus undeveloped as to the causation issue.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (dkt. 63) is granted in part and denied in part. Plaintiff may proceed with his claims that he endured adverse living conditions at the Cook County Jail during his January 2017 confinement in Division 2 Dorm 4. His other claims are dismissed. Plaintiff's motion for summary judgment (dkt. 68) is denied to the extent it seeks summary judgement, but has been considered as part of his response to Defendant's motion for summary judgment.

**ENTER:**

**Date: February 19, 2019**

*[signature]*
**Hon. Elaine E. Bucklo**
**United States District Judge**